## 17905

Otis E. GOSNELL, Appellant, v. Curtis G. BRYANT and Employers Mutual Liability Insurance Company, Respondents

(125 S. E. (2d) 405)

. *Messrs. Charles & Charles,* of Greenwood, *for Appellant,*

216

*Messrs. Watkins, Vandiver, Freeman & Kirven,* of Anderson, *for Respondents,*

*Messrs. Charles & Charles,* of Greenwood, *for Appellant,* in Reply,

May 2, 1962.

Moss, Justice.

This is a workmen's compensation case, wherein an employee appeals to this Court from an order of Honorable J. B. Pruitt, Judge of the Tenth Circuit, affirming an order of the South Carolina Industrial Commission denying a claim for compensation. The question here for determination is whether there was any competent evidence to support the finding of fact by the Commission that there was no causal connection between the employee's injury of April 22, 1959, and his asserted disability based on an injury to his back for which he filed a claim on February 26, 1960.

Otis E. Gosnell, the appellant herein, a saw mill worker, while employed by Curtis G. Bryant sustained a compensable injury when a cant hook he was using to roll logs onto a saw mill carriage slipped, struck him in the chest, and knocked him to the ground. Gosnell was sent immediately to a physician, Dr. D. O. Royal, whose examination disclosed a fracture of the eighth rib on the right side.

The record shows that on May 6, 1959, Otis E. Gosnell, the employee, Curtis G. Bryant, the employer, and his insurance carrier, Employers Mutual Liability Insurance Co., reached an agreement, which was reduced to writing, in regard to compensation for the injury sustained. This agreement recited that while rolling logs with a hook, the hook slipped and the handle thereof hit the employee in the ribs on his right side. It was further agreed that the employee, for such injury, would receive compensation payable from April 30, 1959, until terminated in accordance with the provisions of the Workmen's Compensation Law. This agreement was approved by the Industrial Commission on May 21, 1959, and pursuant thereto, medical care was furnished to the employee and temporary total disability compensation was paid until May 10, 1959.

Three hearings were conducted by a single Commissioner on the claim of the appellant for disability compensation

based on an injury to his back. The single Commissioner, on December 5, 1960, found that the employee did, on April 22, 1959, suffer an injury, by accident, arising out of and in the course of his employment. He also found that the employee returned to work on May 13, 1959, but that he became disabled again on September 25, 1959, and was totally disabled to perform his work. He directed the employer and the carrier to make weekly compensation payments from said date until terminated by the Commission. The employer and his carrier appealed to the full Commission on the ground that there was no competent evidence to support the finding of the single Commissioner that the employee suffered disability beyond May 13, 1959, that was causally related to his injury of April 22, 1959. On April 10, 1961, a majority of the full Commission filed its order reversing the single Commissioner and finding "as a fact that the employee, Otis E. Gosnell, after May 10, 1959, suffered no further disability causally related to his covered injury of April 22, 1959." Gosnell appealed to the Circuit Court and by an order dated July 20, 1961, the Honorable J. B. Pruitt affirmed the full Commission in denying the claim of the appellant. Timely notice of intention to appeal to this Court was given.

It is now well established that the burden is upon the claimant to prove such facts as will render his injury compensable within the provisions of the Workmen's Compensation Act, and such award must not be based upon surmise, conjecture or speculation. *Brady v. Sacony of St. Matthews*, 232 S. C. 84, 101 S. E. (2d) 50; *Glover v. Columbia Hospital*, 236 S. C. 410, 114 S. E. (2d) 565; and *Packer v. Corbett Canning Co., Inc.*, 238 S. C. 431, 120 S. E. (2d) 398. We have likewise held that it is the exclusive function of the Industrial Commission to settle questions of fact. The limit of the inquiry which the Circuit Court and this Court is permitted to make is whether there is any evidence reasonably tending to support the conclusions of the Commission. *Corley v. S. C. Tax Commission*, 237 S.

C. 439, 117 S. E. (2d) 577, and *Steed v. Mount Pleasant Seafood Co.,* 236 S. C. 253, 113 S. E. (2d) 827.

The appellant, immediately after he was struck in the chest by a cant hook slipping off a log, went to the office of Dr. D. O. Royal. An examination by this physician, including the taking of *x*-ray pictures, disclosed a fracture of the eighth rib on the right side. The appellant was given eight treatments by this physician and he saw him the last time on May 8, 1959 and dismissed him as being able to resume work on May 13, 1959. The appellant resumed his work on May 14, 1959. This physician testified that the appellant did not complain of any trouble with his back. The appellant admits that he did not tell the physician about any pain in his back. This physician did not see the appellant again until February 10, 1960 and it was at this time that complaint was made about low back pain. This physician gave as his opinion that since the appellant returned to his work on May 14, 1959 and did the same type work satisfactorily until September 25, 1959, that the appellant was fully recovered from the injury to his rib, and if there had been any damage to appellant's back from the injury, such would have shown up within this period of time. It is perfectly apparent that this physician gave no medical opinion in support of the employee's contention that his low back pain was the result of his injury.

It further appears that the appellant was examined by Dr. William A. Boyd, an orthopedic surgeon of Columbia, South Carolina. It was his diagnosis that the appellant had some time in the past received a lumbosacral strain with resulting instability of the low back structure and that he had received aggravation superimposed upon a preexisting osteoarthritis, all of which combined to render him totally disabled. Dr. Boyd did not give any medical opinion that these conditions were in any way related to the injury received by the appellant on April 22, 1959.

Thus, it is clear that there is no medical testimony in support of the appellant's contention that his disabling low back condition was causally related to the

established covered injury of April 22, 1959. We have held that when the testimony of medical experts is relied upon to establish causal connection between an accident and subsequent disability, in order to establish such, the opinion of the experts must be at least that the disability "most probably" resulted from the accidental injury. *Cross v. Concrete Materials,* 236 S. C. 440, 114 S. E. (2d) 828. The medical testimony in this case does not accord with the foregoing requirement.

The appellant testified of the injury to his right side on April 22, 1959 and of his treatment by Dr. Royal therefor. He admits that he returned to his former employment on May 14, 1959, but asserts that he couldn't do the work that he had previously done. He further testified that he was unable to work regularly because of his physical condition. He also testified that because of the condition of his back he couldn't "even cut stove wood at home." The claimant also testified that because of his back condition it was necessary for him to wear a brace and walk with crutches. The claimant admits that his work with his employer was terminated on September 25, 1959.

The record conclusively shows that the appellant did, on October 5, 1959, file his claim with the South Carolina Unemployment Security Commission for unemployment compensation benefits. Section 68-1 *et seq.,* 1952 Code of Laws of South Carolina. In this claim the appellant asserted that he was able to work and available for work. The Commission found that the appellant received unemployment compensation benefits from October 14, 1959 through March 9, 1960 in the total amount of $462.00. The appellant explains that he is unable to read and did not represent to the Security Commission that he was able and available for work.

The employer and two co-workers of the claimant testified that he returned to work on May 14, 1959, and did the same work of rolling logs as he did prior to his injury. Each witness testified that the claimant performed the heavy work required of a saw mill worker just as he had done prior

to his injury. They could tell no difference as to how he walked before and after the accident. Typical of this testimony was that given by Willis Lyle, a co-worker of the claimant:

"Q. Did you observe his walk both before and after the accident?

"A. Yes, sir.

"Q. Could you or not tell any difference in how he walked before and after the accident?

"A. I could tell no difference.

"Q. There was no difference in his walk?

"A. I didn't see any difference.

"Q. Did he perform his work in a satisfactory manner so far as you could tell?

"A. Yes, sir.

"Q. Is it heavy work or light work?

"A. It is heavy work.

"Q. Did he do heavy work after he went back after the accident?

"A. He did the same work as before.

"Q. What did it consist of?

"A. He was rolling logs down to the mill.

"Q. Where did he roll them?

"A. He rolled them a hundred to two hundred feet.

"Q. Where to?

"A. Up to the skids, just behind me.

"Q. What was your job?

"A. Sawing.

"Q. After the accident, did you ever see him rolling heavy logs or what type did he roll?

"A. He rolled big ones and small ones. He rolled all types. A lot were big ones."

There was also testimony that the claimant worked slightly more than half the working days from May 14, 1959, to September 25, 1959, at which time he was laid off due to a reduction in the saw mill force because of the installation of some automatic machines and a slacking off of saw mill

work. There is testimony that at the time he was laid off he told his employer he would like to resume working for him at any time he could use him.

There is also in the record the testimony of a business man of Anderson and a policeman in the town of Walhalla, both of whom knew the claimant, and they say they observed him during the period from July, 1960, to October 13, 1960. Each testified that they had seen the claimant on a number of occasions engaged in chopping logs and wood with an axe; they had observed him walking in a normal manner without any limp, drag or apparent difficulty. There was a denial of this testimony by the claimant. However, they testified that they saw the claimant on crutches about July 11, 1960, the day of a hearing in this case.

The majority of the Commission, by its order, found "there is nothing in the non-medical evidence which convincingly supports the employee's contentions. On the contrary, the non-medical evidence is such that it does negate the employee's contentions." The Commission also found that "the employee has failed in his burden of proof."

We have not recited or referred to all of the testimony found in the record but have stated enough thereof to show that such made a question of fact to be determined by the Industrial Commission. The Commission found as a matter of fact that there was no causal connection between the injury and claimant's present condition. We cannot say that the conclusion of that body is without evidentiary support.

Affirmed.

TAYLOR, C. J., and LEWIS, BUSSEY and BRAILSFORD, JJ., concur.